Whether a witness's testimony is accurate or mistaken, reliable or untrustworthy is the jury's determination. That determination is made based on a variety of factors, including bias, demeanor, motivation, and circumstances that provide a context for that testimony. In this case, the court kept the jury totally in the dark regarding an event that was central to an evaluation of credibility of the officers and to Mr. Clay's theory of defense, and that is, both Anderson and Thomas' exposure to physical evidence that contradicted their sworn testimony and provided them with an opportunity to tailor their testimony to fit the evidence. There is some dispute regarding the inconsistency. Testimony at the first federal trial was clear that Anderson testified to hearing a total of four shots, and that's noted in my reply brief. It's noted in my original brief, specifically pages 19 and 20 of that transcript. Anderson describes his shots as pops. He hears three pops prior to approaching the parking lot. After he that would be the fourth shot. Thomas also testifies to there being three shots prior to approaching the parking lot. That evidence is, I would submit, is undisputed by the record. There's really no question. Thomas also testifies to Mr. Clay wearing a black shirt. In fact, Mr. Clay was wearing, oh, I'm sorry, Mr. Clay was wearing a white shirt. In fact, Mr. Clay was wearing a black shirt. Defense Exhibit 12 is the shirt that was admitted at the first trial, and it is clearly a black shirt. Now, there is a white shirt underneath because the shirt's been cut off, but the shirt Mr. Clay by the EMTs, but that's very clear. It's a black shirt. Likewise, the casings are recovered from the scene, and there are only three casings recovered from the nine millimeter that's found on the scene that the officer alleges Mr. Clay possessed. What happens at the end of that first trial is both Anderson and Thomas sit in the front row during closing argument, and they listen to the closing argument, which highlights the impossibility of their sworn testimony. And these are direct quotes from the closing argument at 231, factually impossible based on the evidence. At 236, the physical evidence, despite what the prosecutor says, does not match the stories. Page 240, look at the inconsistencies, things that don't match the physical evidence. There are seven additional references to the physical evidence. There's no fourth shell casing. It's a black shirt, not a white shirt. Less than two months after observing that proceeding, Anderson and Thomas give different testimony at the second trial that now totally conforms to the physical evidence. For Anderson, four shots becomes three shots. For Thomas, a black shirt or white shirt becomes a black shirt. Yes, I was not trial counsel. Yes, the trial counsel was able to use the prior transcript to show the inconsistencies. Trial counsel was not, however, allowed to adduce any evidence either through their own witnesses, Sergeant Kobanaw, the defense investigator, or during cross-examination regarding their observation of the proceeding where these discrepancies were highlighted, which was basically the central theory of defense is the physical evidence does not support the testimony of the statements. Trial counsel didn't get to show the opportunity and the means by which they would have been able to conform their testimony. That trial happened two months before the second trial. There were state court proceedings and as the briefs allude to, there were two hung juries before this one where he was finally convicted. And Mr. Clay was only convicted after the testimony became consistent with the physical evidence. There were also depositions in the state court. So certainly there are prior statements. However, all of those... I can tell you from the state proceedings, it was not defended and there were not extensively, the physical evidence was really not brought out because that was a trial for assault where Mr. Clay was charged with shooting and assaulting the officer. So a lot of the physical evidence did not, the same arguments were not made. Without referring to the closing argument, without asking about asking whether they were aware that only three casings were discovered. I don't... I don't think it would and I'll give you an example. Well, first answer the first question. Did they ask him that? Did counsel ask him that? I do not. I'm not certain about that. Is there any order preventing that question and answer? There was as to whether or not they had ever seen, knew the shell casings and the t-shirt. I'm not sure. I don't believe, I don't believe there was. All right, so why wouldn't that have accomplished the same purpose? You guys know that the physical evidence is three casings and a t-shirt. There's no... Color and you switched your testimony to tailoring. There's no evidence one way or the other as far as I know that Thomas had previously seen the shirt or that Anderson was aware of the casings. There's not evidence that they're in either way and here's, here's the problem with that Judge Colleton. I don't, I don't... And they may have said, I really don't recall. I'm not sure. Anderson and I think the government depicts Anderson as saying, well, you know, memories change and he point here is, is not whether or not they had knowledge of it. The key point is subsequent to observing that proceeding. That's when their testimony changed and that is relevant to credibility determination. Even if they had knew about the bullets and or the shirt, the key fact here is they changed their testimony to be consistent after observing that proceeding. All the other statements from the trial, the depositions, all of those occurred before that proceeding. So even if they had possibly had some knowledge of how many shell casings or maybe there was a problem with the color of the shirt, they did not see that until watching closing argument from the front row. Mr. Clay, uh, the jury to evaluate credibility should have been privy, should have been exposed to that fact that the... Yes. Uh, there was a motion in Lemony, which, which defense counsel concurred with and it was to not mention the prior trial and... She, uh, trial counsel suggested just referring to it as a prior proceeding in the same way that they talked about prior testimony. You gave a prior, prior sworn testimony at a prior proceeding under oath and simply limited it to that. I'm sorry. You have to get to that. Oh, not, I think regarding Anderson, regarding Anderson, there is a diagram, which is right here. It isn't listed as page seven of my brief. That diagram was used in closing argument and that highlights the, the ballistics. Defense Exhibit 12, in closing argument, defense counsel used the black shirt to say, see, this is black. It's not white. And I want to also address something that Judge Colleton wrote, um, raised regarding, well, couldn't we have just asked? If you look at the first trial, Thomas identifies Mr. Clay as the shooter. Oh, yeah. I saw Colin Clay. I saw, uh, I saw the defendant, uh, shoot. And it takes defense account, uh, defense counsel, uh, some effort to finally explain and show, actually, you're just saying it because he was the defendant. He was arrested. You never saw the face of the person with the gun. You only identified that person as, uh, by the other issue in this case. Um, defense, we're not limited to only showing our theory of defense through cross-examination of the two police officers. We, we should not be limited that way. Uh, defense counsel suggested presenting Sergeant Kobanaw, the case agent who was present during the proceedings, and the defense investigator. Um, and I, I do want to highlight there was, the actual shirt was marked as a defense exhibit. I don't believe there's any evidence in the record that, uh, Thomas had seen that shirt. Um, I'm not aware of it. If it's, if it is out there, I apologize, but I do not believe it's there. I, I do see that I'm in, into my rebuttal time. Um, I would like to reserve that time for rebuttal if, unless the court has additional questions at this point. Thank you. Mr. Edwards, I hear from you. Thank you, Your Honor. What was the government's reason for trying to keep out this cross-examination? Your Honor, there was a discussion that's held in the record and that is, uh, contained, uh, on the transcript. And at the point that this was brought up, um, the reference was to, by defense counsel, trial counsel, was that they would like to cross-examine on the, on the witness' ability to have seen closing argument. And the government's response to that was, uh, that, uh, the defense attorney had already had the opportunity to impeach these witnesses using their previous statements. That there was a motion in limine that had been filed and agreed to that the previous trial would not be referenced. Additionally, uh, the defense attorney did alter her argument to say that she would like to, uh, reference it as a, uh, prior proceeding. However, she continued to persist in, as a summary of evidence. And it was the government's position at that time that there are very few limited circumstances in which a jury would hear a summary of the evidence and would lead the jury to believe that possibly there had been closing argument and a previous trial, which would be in violation of the motion in limine. And, uh, and was not truly relevant, especially in light of the, uh, cross-examination material that the defense already had. As the court noted, it was our motion in limine that was agreed to by the defense and it wasn't to preclude a reference to a prior trial. It was to preclude, uh, any sort of mention as to the prior trial as a trial. In other words, the defense was able to use, uh, testimony from the previous trials as well as police reports, uh, a deposition that Officer Anderson gave. The defense was able to use, uh, those items, but they were not allowed to refer to it as a trial. So in other words, it could be a previous hearing or a prior proceeding. And the defense attorney successfully did that through both the first trial and the second trial. She was able to use the testimony from the state proceeding. She was able to use in the second federal trial, the testimony from the second trial. She was able to use the police reports, and she was also able to use, uh, Anderson's deposition in order to impeach his prior, his, his current statement in the second trial with his prior inconsistent statements. And that's evident throughout the record. And really, really what we're talking about. That's correct, Your Honor. And that goes to the district court's ruling when this was brought up each time. When it was first brought up, uh, it was brought up and the district court said that she was not going to, uh, she was not going to allow it for a variety of reasons. That was the first day of trial. Prior to the second day of trial, it was brought up again within the context that Mr. Moss mentioned as calling a third party to talk about the witness's ability to view the trial. At that time, the district court expanded upon her ruling and what she said, which is that, uh, the, uh, the continued objection and the reason that it was objected to was because she continued to attempt to ask the question in the manner of you had the opportunity to view a summary of the evidence. And so, it comes back to a summary of the evidence in a prior proceeding. And that's cutting it awfully fine, but, but that is also part of the reason I think the district court ruled the way it did because what the district court said, uh, the defense counsel, uh, said, I do realize I was able to impeach him with a prior inconsistent statement that I think it's also important to explain why. What reason the statement could have changed is because he saw it. And the court in response said, you know, Ms. Allen, you are very skilled. You could have easily said, since that night you had an opportunity to see the evidence and you know there's a white t-shirt in evidence and you didn't, I mean, this is more confusing than helpful, so I'm not going to allow it. And as the court is aware, the district court wide latitude to limit cross-examination. And one of those reasons is for confusion of the issues. And so, while this is cutting it very fine, uh, the district court determined that there would be at least the possibility of the jury confusing the issues at trial here. And part of this is this was a federal, this was a felon in possession trial. And the evidence that the, uh, defense was attempting to get into, uh, was not just the prior inconsistent testimonies. It doesn't just apply to that. It also applies to the bias evidence that is part of issue two. But before I move on to that, I do want to talk a little bit about some of the, uh, statements that were elicited at the second trial because Anderson's testimony was inconsistent, but it was not wholly consistent with the evidence and the record bears that out. During the second trial, uh, on cross, Anderson did talk about a first pop and one other pop. And then he agreed under cross-examination that he had previously given a statement under oath that he heard two pops after the first pop. That was the second trial. It's at volume one, page 67. Then this exchange occurred between, uh, trial counsel for the defense and officer Anderson. The defense attorney asked, and you agree that you have previously said there were at least three shots. Anderson, yeah, there were at least three shots. There were several shots during that time period. On redirect, the government asked, and talking about the number of shots that you heard or didn't hear, you know, you heard two shots. Anderson, I heard at least two shots. Yes. The government. Do you have any idea the total number of shots you heard before you turned the corner and saw the defendant with a gun in his hand? Anderson? No, I do not. All I know is I heard several shots being fired. So the proposition that his testimony was wholly consistent with the physical evidence is not true. His testimony was that he didn't know how many shots had been This also bears out with Officer Thomas when during the second trial he's cross-examined with regard to the black and white shirt. Because here again, the defense attorney has the opportunity and the ability to impeach Officer Thomas with other, with other, uh, prior inconsistent statements other than the opportunity to view, uh, to view the trial. And specifically, um, that, that exchange occurs in the second trial, volume one, pages 139 to 142. And the defense counsel asks, what were you able to see? Was that the man was wearing a white shirt, correct? And Thomas answered, yes, ma'am. Defense counsel asks, and so you come back over and you see that Officer Anderson has shot someone, correct? And Thomas answers, yes, ma'am. Defense counsel asks, and you believe that it is the same guy from the parking lot? And Thomas says, yes, ma'am. Defense counsel asks, and the Thomas says, I believe that because again, there were two suspects in the parking lot. I'm chasing after one. I know he had left the area from last that I had saw him and he matched the description of what I saw in the parking lot. Yes, ma'am. Defense counsel, and specifically that white t-shirt that matches the description, correct? Thomas, it was him. I believe it was a white or black t-shirt, one that black t-shirt over white t-shirt. Defense counsel was then able to impeach Thomas with his statement to the Kansas City, Missouri Police Department that occurred that night. She was also then able to impeach him with the transcript from the first trial where he agreed that he had previously testified that the person he saw with the gun was in a white shirt. And then she was able to use those inconsistencies to make an argument during closing. And that argument, the pertinent part to Thomas is contained in the second trial, volume two, page 303, where the defense counsel said, and today, for the first time ever, he attempts to say, referencing Thomas, that the person who was wearing, that the person was wearing a black shirt. You heard him testify. You heard him admit to it when I questioned him. He has consistently said over the years, time and time again, I saw a person in a white shirt. And the only reason I identified the person in the white shirt that I saw in the parking lot is because when I saw the person laying on the ground, they were wearing the same clothing, a white shirt. He has changed his testimony today to a black shirt. That is not true, and he's changing it to conform to his partner. So the argument that appellant counsel now tries to make, which is that it eviscerated the defendant's right to talk about this evidence, to argue it to the jury, that just doesn't bear out in the record. Because the defense attorney was able to argue about that difference between Thomas from the first trial and the second trial. And that bears true with regard to Anderson and the number of shots. Again, in closing, during the second trial, in volume two, on page 304, the defense counsel says, you hear Officer Thomas talk about a shot, and then two shots later hearing that. You heard Detective Anderson say a shot, and one shot later, although he admits in past testimony, that he said one shot, and then two shots later. You heard Abram Clay say three shots. We have three shots from a 9mm. One, two, three. She then exploited the inconsistencies to argue that these witnesses were not credible, that the jury should not believe them, and that it provided reasonable doubt. And isn't part of the defense concerned the closing argument of the government in which they suggest it's a memory problem as opposed to an intentional fabrication? That is one of the concerns, Your Honor. But I think that just as the defense is able to argue reasonable inferences, so is the government. And when Anderson testifies, I'm not sure as to how many shots were fired before I turned that corner. This trial occurred after a number of years. I believe it was four or five years later. I don't remember the exact The inconsistency had been drawn out, and I believe the government is able to argue the reasonable inferences as well. And the government wasn't highlighting the consistencies between the two witnesses. The government was explaining the inconsistencies that had been drawn out based upon defendant's cross-examination using all of the prior inconsistent statements that they were able to get into. The question is, was this an abuse of discretion, and was this prejudicial to the defendant? And considering the amount of cross-examination that occurred, the amount of material that was present for cross-examination purposes, and to highlight inconsistent statements, I just don't believe that there could be any prejudice, especially when we're limiting it to one issue. And that doesn't even bring into account all of the other witnesses that testified. The shell casing issue is more than just Officer Anderson and Officer Thomas. It is also Alexis Lally, who's the firearms expert, who testifies about where shell casings could have gone and how shell casings that weren't recovered. So to isolate this issue and say that just because of this one thing, this was ineffective and it eviscerated our defense, I don't believe that that is an accurate statement, considering what the defense was able to exploit during closing argument. The question is whether or not the confrontation clause guaranteed an opportunity for cross, not whether that cross is conducted in whatever way the defense wishes. And that's what this is. And I would highlight that the cross-examination wasn't just limited to these issues. The defense attorney was able to cross-examine with regard to DNA evidence, fingerprint evidence, testimony obtained from Anderson at a deposition, the number of shots Anderson heard, the number of people in the area in the crowd, how many shots were fired, the number of cars Detective Anderson hit while firing his weapon, the type and color of the clothing worn by Clay, how Detective Anderson moves Clay's firearm with his foot, the statement Detective Anderson gave to investigators and he mentioned moving the firearm with his foot, what Detective Anderson heard and saw Officer Thomas do after Clay was shot, the Kansas City, Missouri Police Department's off-duty policy and whether or not Anderson was in violation of the policy and the consequences for being in violation of the off-duty policy. These were all subjects for cross-examination. There were plenty of inconsistent statements that they were able to draw out and other areas that they were able to highlight in order to show that there was possible bias with regard to these witnesses. And I don't want to ignore the second issue. I only have a couple minutes left. The second issue has to do with the bias that Anderson would have had if he had shot an unarmed man. This exchange occurred in volume one, page 81 of the second trial where the defense counsel asked Anderson, you would agree though that shooting someone is much, much more serious than potentially violating off-duty policy? And Anderson responded, yes. Defense counsel then said, and if this is found to be an unjustified shooting, you face extremely serious consequences. And Anderson said, possibly, yes. And then in closing argument, the defense counsel argued on volume two, page 298, and what happens when Officer Anderson shoots a person in the back because that is unarmed? What goes through his head at that moment? Because that's how you have to understand how we get here. Because that's a big deal. He's made a mistake, he's screwed up, and it's as simple as this. This is not some vast Kansas City Police Department conspiracy. It's as simple as this. He has done something wrong and the consequences should be huge, could be huge. The record shows that the appellant was able to argue bias, that she did get to ask the question that they complained about not asking with regard to what the consequences could have been. The objection was to further implications from that and the court excluded that. I would just say in closing that to show a confrontation clause violation, the defendant has to show a reasonable jury, might have received a significantly different impression of a witness's credibility had counsel pursued that line of questioning. I don't think that's possible here because of the volume of prior inconsistent statements and the source of those inconsistent statements. Thank you. Thank you, Mr. Edwards. Thank you. I would like to start out by addressing Judge Reed's questioning regarding how the government used the evidence to exploit the fact that we could not present this evidence. In closing argument, the government at 290, 291 says that Anderson testified about two or three or four shots. At page 211, the government argued there was no evidence to show that Anderson and Thomas were untruthful and no motive for them to be untruthful. And finally, at 311, the government stated, that may be 211 actually, quote, because they're human beings, we all see something different, end of quote. So granted, we were able to show inconsistencies in prior statements. No question about that. The government was allowed to portray those inconsistencies as that's just the way human memory works. We all remember things differently, especially when it happened three or four years ago. What the jury was not allowed to know is that two months prior, both witnesses were exposed to direct argument and evidence that contradicted their physical, their stories. It contradicted it. The jury should have known that. The jury should have had the opportunity to be exposed to that. Officer Thomas, he never ever stated anything about, well, Mr. Clay had a black shirt over a white shirt. And if you do look at Defense Exhibit 12, which I know it would be, it's a physical evidence, you can see how it's cut off. And there is a white t-shirt underneath it. That was so specific, it basically corroborated the detail and the reliability of his testimony. And we were not allowed to show, well, you just saw Defense Exhibit 12 two months ago. You saw it Detective Anderson. The government... Didn't you see this Defense Exhibit 12 two months ago? I think they could have done that. But again, as I pointed out, Officer Thomas was, I would characterize as a fairly cagey witness. If you look at the first testimony, he was hard to pin down. And it took Defense Counsel great efforts to even show that he really didn't identify Mr. Clay, he didn't identify him, but anything but the white shirt. Issue number one, the government has basically argued that, well, we were able to show cross-examination and we were able to draw discrepancies. Mr. Clay had a right to present a defense, a due process right. There is nothing in the law that requires us to only show our that we are claiming our bias and have a motive to lie. That exists nowhere. We were entitled to present independent evidence to show our theory of defense and that did not happen in this case. The court did exclude that evidence for two reasons. One, she said, well, Portuando, which is directly on point, that really referred to testimony and this is closing argument. I would submit that distinction actually bolsters the need to admit such testimony. And then the court also said, well, the defense attorney, that you had prior statements. First of all, that's never a reason, that's not a legitimate reason and all those statements occurred before this prior proceeding. For all those reasons, we believe that you cannot sustain Mr. Clay's conviction in this case and a new trial should be ordered. Thank you. It's very well. Thank you both for your arguments. The case is submitted and the court will file an opinion in due course.